### IN THE FEDERAL DISTRICT COURT FOR THE
### WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| BELWITH PRODUCTS, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.:1:22-cv-335 |
| | ) | |
| | ) | Honorable: |
| MENARD, INC. | ) | |
| | ) | **Plaintiff Demands Trial By Jury** |
| | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

Plaintiff, Belwith Products, LLC, by its attorneys, for its Complaint against Defendant, Menard, Inc., states:

### PARTIES AND JURISDICTION

1. Plaintiff, Belwith Products, LLC ("Belwith"), is a limited liability company having its principal place of business in Grandville, Michigan.  Belwith has two members: (1) John D. Veleris and (2) the John D. Veleris Family Gift Trust. John D. Veleris is a citizen of Florida. The trustees of the John D. Veleris Family Gift Trust are Vanessa Veleris and George Garifalis. Vanessa Veleris is a citizen Florida and George Garifalis is a citizen of Illinois. For purposes of diversity jurisdiction, Belwith is a citizen of both Florida and Illinois.

2. Defendant, Menard, Inc., ("Menards") is a Wisconsin corporation having its principal place of business in Eau Claire, Wisconsin. Menards is a large-scale retailer of home improvement and other products, and has store locations throughout Michigan, including throughout West Michigan and Kent County. Menards is a citizen of Wisconsin.

1

3. This Court has jurisdiction over this matter under 28 U.S.C. § 1332 as Belwith is a citizen of Florida and Illinois, Menards is a citizen of Wisconsin, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. Venue is proper in this Court as Belwith's principal place of business is located within the Western District of Michigan and Menards operates retail stores throughout the Western District of Michigan.  Further, a substantial part of the events or omissions giving rise to Belwith's claims occurred within the Western District of Michigan.

## FACTUAL BACKGROUND

5. Belwith is in the business of selling decorative hardware to retailers such as Menards for resale. Belwith also provides core retailers with custom-made, high-end display cabinets for purposes of marketing Belwith's decorative hardware.

6. The display cabinets remain the sole property of Belwith.

7. For approximately the past 20 years, Belwith has been the exclusive decorative hardware supplier to Menards.

8. To that end, Belwith has sold its decorative hardware to 335 Menards stores, including Menards' Michigan locations, and provided those stores with Belwith's high-end display cabinets exclusively for purposes of displaying Belwith products.

9. From April 2010 through the Summer of 2021, the contractual relationship between Belwith and Menards was governed by contracts known as Vendor Compliance Program Letters (the "VCPLs") dated September 30, 2010, and April 28, 2016.  These are attached as Exhibits 1 and 2 respectively.

10. The VCPLs were renewed during the period from 2010 to 2021.

11. The VCPLs state, *inter alia*, that Belwith would provide the display cabinets for Menards' use and Belwith was to be responsible for the maintenance of Belwith's display cabinets. This maintenance obligation was consistent with and reflective of Belwith's continued ownership of the display cabinets, as was the asset tag continuously affixed to the display cabinets that stated, "Property of Belwith Products."

12. That retained ownership interest was likewise consistent with the absence of any purchase orders, invoices, or order status documents reflecting the sale of such display cabinets to Menards--documents that Menards specifically required in the VCPLs for all purchases from Belwith. (See Exhibit 1 at p.2; Exhibit 2 at p.5).

13. Belwith's retained ownership was further consistent with the requirement that Menards "utilize the displays supplied by Belwith Products, LLC exclusively for Belwith Products." (See Exhibit 1 at p.4; Exhibit 2 at p.2).

14. Belwith's retained ownership also was consistent with the express terms of the April 28, 2016, VCPL:

> All display materials to be provided to Menard Inc at no charge. Free cabinet hardware for all display purposes will be provided to Menard Inc. It is understood that the display structure is property of Belwith. Accordingly, Belwith assumes all maintenance obligations and logistic costs associated with the displays.

(See Exhibit 2, p.2).

15. Finally, Belwith's continued ownership of the display cabinets was in accord with trade custom and usage.

16. Pursuant to its maintenance obligations, Belwith expended approximately $400,000 per year in labor and support costs to maintain the display cabinets and additionally provided new and replacement parts at an average annual cost of $320,000 per year for the past five years.

17. In early 2020, Belwith and Menards were in negotiations to extend certain VCPL's. When those negotiations broke down, Menards, for the first time, asserted that it owned the display cabinets.

18. Menards has persisted in that demonstrably false claim and refused to return these cabinets to Belwith, which are worth in excess of $1.5 million.

19. Moreover, beginning in at least 2020, in contravention of the 2016 VCPL, Menards has been using the Belwith display cabinets for non-Belwith products and has converted the cabinets to its own use.

20. As of the date of this Complaint, Menards was still using Belwith's display cabinets in its Holland, Michigan location to sell products other than Belwith products:




38900653.3/155630.00007

21. As of the date of this Complaint, Menards was still using Belwith's display cabinets in its Wyoming, Michigan location to sell products other than Belwith products:





38900653.3/155630.00007

22. Upon information and belief, Menards is currently using Belwith's display cabinets in all its more than three hundred stores.

23. In an apparent negotiating ploy, in or about August 2020, Menards unilaterally deducted $1.5 million from amounts owed to Belwith under the current VCPL for Belwith products sold to Menards.

24. Menards' purported justification for this deduction was the claim that Belwith had not been meeting its maintenance obligations regarding the display cabinets.

25. Menards contended that this alleged issue had occurred continually since 2010 and that it had cost Menards $1,500,000 in payroll and materials, which it thus refused to pay Belwith.

26. Menards, however, had never complained previously of the alleged display maintenance deficiencies. The displays, of course, were in full view of Menards agents and employees on a daily basis.

27. If Menards had a complaint about how Belwith was maintaining the displays, any such complaint needed to be raised promptly and in accordance with the April 2016 VCPL, which explicitly called for any complaints to be raised, documented and resolved monthly.

28. The April 2016 VCPL provided:

**OVERVIEW**

On a *monthly* basis your [*i.e.*, Belwith's] performance will be evaluated. Fines, if any, resulting from this policy will be deducted *each month*. These deductions will provide *all the detailed information and give you an understanding of your current standing with Menards*. Menards Vendor Compliance Policy is also available at https://partners.menard-inc.com. In addition, there is a reports menu available on our Partners site https://partners.menard-inc.com that will be updated daily where you will have access to the pending fine details in regards to on time shipments. Pending fines are available for a minimum of 4 weeks to be reviewed on our website. Once fines are removed from the website and deducted from your

6

account, any claims disputing these fines will be denied. *Keep all your documentation to validate your dispute*.

(*See* Exhibit 2 at p. 32) (Emphasis added).

29. The April 2016 VCPL further provided:

**Communication: Fees and Penalties.** For any month where Menards fees and penalties, in total exceed $10,000, Menards agrees to, at the executive level (Merchandise Manager), initiate and hold a discussion with Belwith within two (2) weeks of taking the deduction(s).

(*See* Exhibit 2 at p. 2)

30. Menards did not initiate discussions with Belwith regarding alleged fees and penalties which exceeded $10,000 per month.

31. Thus, Menards failed to satisfy a condition precedent to any fee or penalty under the April 2016 VCPL.

32. Menards has also wrongfully withheld $180,731 of additional funds owed to Belwith in late 2020 and 2021 on the purported ground of late delivery fines.

33. Delays during this period were caused by well-recognized global supply chain issues that made any fine or penalty inappropriate under the April 2016 VCPL's force majeure provision. (See Exhibit 2 at p.4).

34. Menards' withholding of Belwith's funds and wrongful retention of Belwith's display cabinets are being done in an improper attempt to exert leverage over Belwith for purposes of negotiating the parties' future arrangements.

35. Belwith has made multiple good faith attempts to resolve all the above issues, including continuing to provide decorative hardware products to Menards. Belwith's good faith efforts, however, have been rebuffed, forcing Belwith to stop selling products to Menards.

36. Menards currently owes Belwith $304,467 for products previously sold to Menards.

## COUNT I
### (Breach of Contract--Withholding of $1,500,000 Due to Belwith)

37. Belwith realleges and incorporates by reference paragraphs 1 through 36 as if fully restated herein.

38. The VCPLs are valid and binding agreements between Menards and Belwith.

39. Belwith has fully performed its obligations under the VCPLs.

40. Menards breached the VCPLs when it withheld $1,500,000 due to Belwith on the baseless and pretextual ground that Belwith was not satisfying its maintenance obligations. As a direct and proximate result of Menards' breach of contract, Belwith has suffered damages of not less than $1,500,000.

Wherefore, Belwith seeks judgment in its favor and against Menards in an amount not less than $1,500,000, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable.

## COUNT II
### (Breach of Contract--Withholding of $180,731 Due to Belwith)

41. Belwith realleges and incorporates by reference paragraphs 1 through 40 as if fully restated herein.

42. The VCPLs are valid and binding agreements between Menards and Belwith.

43. Belwith has fully performed its obligations under the VCPLs.

44. Menards breached the VCPLs when it withheld $180,731 due to Belwith on the baseless and pretextual ground that Belwith was not timely satisfying its delivery obligations.

45. As a direct and proximate result of Menards' breach of contract, Belwith has suffered damages of not less than $180,731.

Wherefore, Belwith seeks judgment in its favor and against Menards in an amount not less than $180,731, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable.

## COUNT III
### (Breach of Contract--Failure to Pay Invoices for Product Ordered and Received)

46. Belwith realleges and incorporates by reference paragraphs 1 through 45 as if fully restated herein.

47. The VCPLs are valid and binding agreements between Menards and Belwith.

48. Belwith has fully performed its obligations under the VCPLs.

49. Under the VCPLs, Menards agreed to provide Belwith with Purchase Orders and agreed to pay Belwith based on Belwith's invoices for products that Menards ordered, and received, from Belwith.

50. Menards breached the VCPLs when it failed to pay invoices for products that it ordered, and received, from Belwith.

51. Menards owes Belwith $304,467 in unpaid invoices.

52. As a direct and proximate result of Menards' breach of contract, Belwith has suffered damages of not less than $304,467.

Wherefore, Belwith seeks judgment in its favor and against Menards in an amount not less than $304,467, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable.

38900653.3/155630.00007

## COUNT IV
### (Breach of Implied Contract – Failure to Pay Invoices for Product Ordered and Received)

53. Belwith realleges and incorporated by reference paragraphs 1 through 52 as if fully restated herein.

54. To the extent that Menards ordered products from Belwith, for which Menards has not paid for, but were not purchased under the terms of the VCPLs, a contract implied in fact existed between Menards and Belwith.

55. Belwith fully performed under the implied contract when it provided the product that Menards ordered to Menards with an invoice for the products.

56. Menards breached implied contracts with Belwith every time it failed to pay invoices for products that Menards ordered, and received, from Belwith.

57. Menards owes Belwith for numerous unpaid invoices.

58. As a direct and proximate cause of Menards' breach of implied contract, Belwith has suffered damages.

Wherefore, Belwith seeks judgment in its favor and against Menards in an amount to be determined at trial, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable.

## COUNT V
### (Breach of Contract--Wrongful Retention of Belwith's Display Cabinets)

59. Belwith realleges and incorporates by reference paragraphs 1 through 58 as if fully restated herein.

60. The VCPLs are valid and binding agreements between Menards and Belwith.

61. Belwith has fully performed its obligations under the VCPLs.

62. Under the VCPLs, Belwith and Menards agreed that Belwith retained ownership of the cabinets provided to Menards for the purpose of displaying Belwith products.

63. Despite Belwith's ownership of the cabinets, Menards has breached the VCPLs by retaining the cabinets and claiming ownership of the cabinets.

64. As a direct and proximate result of Menards' breach of contract, Belwith has suffered damages of not less than $1,500,000.

Wherefore, Belwith seeks judgment in its favor and against Menards in an amount not less than $1,500,000, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable.

## COUNT VI
### (Common Law Conversion of Belwith's Display Cabinets)

65. Belwith realleges and incorporates by reference paragraphs 1 through 64 as if fully restated herein.

66. Belwith is the owner of product display cabinets provided to Menards.

67. At the end of the business relationship between Menards and Belwith, Menards should have returned the display cabinets to Belwith.

68. Menards failed to return the display cabinets to Belwith.

69. Menards has wrongfully exerted dominion and control over Belwith's display cabinets and converted the display cabinets to Menards' own use by using the cabinets to display products other than products manufactured by Belwith.

70. The value of the converted display cabinets is not less than $1,500,000.

71. Menards' actions are a wrongful conversion of Belwith's property.

Wherefore, Belwith seeks judgment in its favor and against Menards in an amount not less than $1,500,000, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable.

## COUNT VII
**(Statutory Conversion of Belwith's Display Cabinets Pursuant to MCL 600.2919a)**

72. Belwith realleges and incorporates by reference paragraphs 1 through 71 as if fully restated herein.

73. Belwith is the owner of product display cabinets provided to Menards for the purpose of displaying Belwith products.

74. At the end of the business relationship between Menards and Belwith, Menards should have returned the display cabinets to Belwith.

75. Menards failed to return the display cabinets to Belwith.

76. Menards has wrongfully exerted dominion and control over Belwith's display cabinets and converted the display cabinets to Menards' own use by using the cabinets to display products other than products manufactured by Belwith.

77. The value of the converted display cabinets is not less than $1,500,000.

78. Menards' actions are a wrongful conversion of Belwith's property, subject to treble damages and attorneys' fees pursuant to MCL 436.2919a.

Wherefore, Belwith seeks judgment in its favor and against Menards in an amount not less than $4,500,000, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable.

38900653.3/155630.00007

                          MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

                By:  /s/ Joseph M. Infante
                      Joseph M. Infante (P68719)
                      Christopher J. Gartman (P83286)
                      Attorneys for Plaintiff
                      99 Monroe Avenue NW, Suite 1200
                      Grand Rapids, MI  49503
                      (616) 454-8656
                      infante@millercanfield.com

Dated:  April 7, 2022

38900653.3/155630.00007