UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BELWITH PRODUCTS, LLC,

    Plaintiff,

v.

MENARD, INC.,

    Defendant.
_____/

Case No. 1:22-cv-335

Hon. Paul L. Maloney

**OPINION AND ORDER**

Belwith Products, LLC ("Belwith") entered into two contracts with Menard, Inc. ("Menard"). Under the contracts, Belwith agreed to serve as Menard's exclusive supplier of decorative hardware. Belwith also agreed to supply Menard with display cabinets to feature the hardware. The parties initially negotiated an extension or renewal of their relationship but could not reach an agreement. Their contract expired in March 2021. By 2021, Menard had allegedly deducted $1,500,000.00 from amounts owed to Belwith, withheld $180,731.00 due to meritless late fees, failed to pay $304,467.00 for products received, and converted the display cases. As a result, Belwith filed this lawsuit alleging multiple breaches of the contracts and two conversion claims. (ECF No. 1.) Menard filed a motion for partial summary judgment and motion to dismiss. (ECF No. 98.) Belwith filed a motion for summary judgment, too. (ECF No. 120.) The Court will grant Menard's motion to dismiss but deny its motion for partial summary judgment. The Court will grant in part and deny in part Belwith's motion for summary judgment.

# I. LEGAL STANDARDS

## A. Motion to Dismiss

Under the notice pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 768 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a plaintiff pleads a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Because Menard filed an answer to the complaint (ECF No. 11), it should have sought dismissal under Rule 12(c) and not Rule 12(b)(6). The two rules use the same standard for evaluating the factual basis for a claim. *Lindsay v. Yates*, 489 F.3d 434, 437 n.5 (6th Cir. 2007). The court overlooks the error as harmless.

## B. Motion for Summary Judgment

A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this burden, the moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record demonstrating the lack of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018).

When faced with a motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The Court must view the facts and draw all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In resolving a motion for summary judgment, the Court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## II. BACKGROUND

Belwith sells decorative hardware, like knobs and handles, for cabinetry to home-improvement retailers such as Menard for resale. (Belwith's Br. in Supp. of Mot. for Summ. J., ECF No. 121, PageID.1061.) To aid in the sale of its decorative hardware, Belwith provides retailers with display cabinets. (*Id.*) For nearly twenty years, Belwith supplied Menard stores with decorative hardware and installed display cabinets in those stores. (Answer ¶ 7, ECF No. 11.) This relationship lasted from 2010 to 2021 and was governed by agreements known as Vendor Compliance Program Letters ("VCPLs"). (*Id.* ¶ 9.)

The parties entered into the first VCPL in 2010. The parties agreed that "Menard Inc. will recognize Belwith Products LLC as the sole supplier of cabinet hardware and will utilize the displays supplied by Belwith Products, LLC exclusively for Belwith Products so long as" Belwith met certain stocking requirements. (2010 VCPL, ECF No. 1-1, PageID.18.) The 2010 VCPL provided that Belwith would provide all of Menard's "mega stores" with free display cabinets to

feature Belwith's decorative hardware. (*Id.*, PageID.15.) Belwith agreed to maintain and upkeep the display cabinets. (*Id.*)

Six years after entering the first VCPL, Belwith and Menard negotiated a new VCPL in 2016. (2016 VCPL, ECF No. 1-2.) The 2016 VCPL recognized Belwith as Menard's "sole supplier of cabinet hardware from April 1st, 2016 through March 31st, 2021," and required Menard to "utilize the displays supplied by [Belwith] exclusively for Belwith Products." (*Id.* PageID.38). The 2016 VCPL also stated that Belwith would provide Menard with display cabinets free of charge. (*Id.*) But the 2016 VCPL, unlike the 2010 VCPL, explicitly provided that the display cabinets were "property of Belwith." (*Id.*) Belwith assumed all maintenance and logistical costs associated with the displays. (*Id.*) In addition, the 2016 VCPL included a *force majeure* clause that allowed delayed performance if Belwith suffered "extraordinary circumstances beyond its reasonable control." (*Id.*, PageID.40.) With about a year left on the 2016 VCPL, the parties negotiated to extend the contract. (*See* Garifalis Dep. 15, ECF No. 121-4.) But the negotiations broke down. (*See id.*) So Belwith and Menard's relationship ended on March 31, 2021. (*See* 2016 VCPL, PageID.38.)

About a year later, Belwith filed this action, asserting five breaches of the VCPLs by Menard and two counts of conversion. Menard moved to compel arbitration. (ECF No. 8.) This Court denied Menard's motion to compel in its October 27, 2022, opinion and order. (ECF No. 31.) The parties engaged in discovery, and discovery was to be completed by October 26, 2023. (ECF No. 69.) On September 18, 2023, Menard moved for partial summary judgment on ownership of the display units Belwith provided to Menard pursuant to the 2016 VCPL and to dismiss Belwith's conversion claims. Belwith moved for summary judgment on each claim against Menard.

## III. ANALYSIS

Belwith alleges seven claims against Menard, specifically five breach of contract claims (Counts I-V) and two conversion claims (Counts VI-VII). Belwith moves for summary judgment on all counts. Menard moves for partial summary judgment on one issue, ownership of forty-three display cases. Menard also moves to dismiss both of Belwith's conversion claims. The Court starts with Menard's motion to dismiss, then moves to the summary judgment motions.

The Court will decide these motions under Michigan law. This action comes to federal court based on diversity of parties. (*See* Compl. ¶¶ 1-3.) In diversity suits, federal courts apply the substantive law of the forum state. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003)). Both parties have addressed the claims using Michigan law. *See, e.g.*, *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("As the parties do not dispute that the student loan contracts at issue are governed by Ohio law, we apply Ohio law to the parties' contractual dispute."). So Michigan law governs.

### A. Menard's Motion to Dismiss: Conversion (Counts VI-VII)

Menard moves to dismiss Belwith's common law and statutory conversion claims for failure to state a claim under Rule 12(b)(6).

Conversion "is established by showing any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F. Supp. 3d 874, 886 (E.D. Mich. 2015), *aff'd*, 646 F. App'x. 418 (6th Cir. 2016) (citation and internal quotation marks omitted). Michigan recognizes two types of conversion claims, common law and statutory. Each cause of action largely has the same elements. "To maintain a claim for common-law conversion, a claimant must establish the following elements: (1) the distinct act of dominion; (2) wrongfully exerted; and (3) over another's

personal property." *A Inv., LLC v. Contact Aviation, LLC*, No. 358212, 2023 WL 3397658, at *6 (Mich. Ct. App. May 11, 2023). To assert a statutory conversion claim, a plaintiff must allege a common law conversion claim and establish "that the defendant had 'actual knowledge' of the converting activity." *Nedschroef Detroit Corp.*, 106 F. Supp. 3d at 887; *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 871 N.W.2d 136, 147-48 (Mich. 2015).

A conversion claim under either theory, however, "cannot be brought where the property right alleged to have been converted arises entirely from the [plaintiff's] contractual rights." *Llewellyn-Jones v. Metro Prop. Grp., Ltd. Liab. Co.*, 22 F. Supp. 3d 760, 788 (E.D. Mich. 2014) (quotation omitted). This doctrine prevents plaintiffs from double-dipping in both tort and contract. The "basic premise" of the doctrine is that "economic losses that relate to commercial transactions are not recoverable in tort." *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 581 (6th Cir. 2016) (quoting *Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 656 N.W.2d 858, 861 (Mich. 2002)). Thus, "[n]ot all tort claims . . . are barred by the existence of a contract." *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 381 (6th Cir. 2015). The doctrine bars only those conversion claims where the legal duty allegedly violated arises from the defendant's contractual obligations.

Here, the parties agree that the VCPLs are valid contracts. And, in Count V, Belwith alleges Menard breached these contracts by wrongfully retaining Belwith's display cabinets. (*See* Compl. ¶¶ 60-64.) Yet Belwith pursues common law and statutory conversion claims for the exact same reason, alleging "Menards failed to return the display cabinets to Belwith." (*See id.* ¶¶ 68, 75.) In this way, the legal duty Belwith alleges Menard violated in its conversion claims is not "separate and distinct" from the allegedly violated duty in Belwith's analogous breach of contract claim. *See Glob. Fleet Sales, LLC v. Delunas*, No. 12-15471, 2016 WL 3251764, at *6 (E.D. Mich. June 14, 2016) (dismissing plaintiff's statutory conversion claim that arose "solely from a

contractual dispute"). So Belwith's conversion claims will be dismissed for failure to state a claim. *See, e.g.*, *P.R.A. Co. v. Arglass Yamamura SE., LLC*, 768 F. Supp. 3d 862, 878 (E.D. Mich. 2024) (dismissing statutory conversion claim because plaintiff alleged an analogous breach of contract claim).

## B. Menard's Motion for Partial Summary Judgment: Ownership of Forty-three Display Cabinets

Menard moves for partial summary judgment on one issue. It claims that Belwith—not Menard—is the rightful owner of the forty-three display cabinets Belwith delivered to Menard stores under the 2016 VCPL. Accordingly, Menard seeks an order from this Court that compels "[Belwith] [to] take possession of the display cases identified or pay the cost of storage for them, or, in the alternative, allow [Menard] to modify them for their own use or dispose of them." (Br. in Supp. of Partial Mot. for Summ. J., ECF No. 99, PageID.749.) But Menard never asserted a counterclaim or mentioned anything in its responsive pleadings about these forty-three display cases. This motion is the first time Menard has raised the issue.

It is black letter law that courts may consider only claims raised in the operative pleadings. *Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 788 (6th Cir. 2005) (affirming district court's refusal to consider claim first raised at summary judgment when new claim had not been pled, nothing in complaint put defendants on notice, and plaintiff had information for claim when she filed complaint but did not include it or seek leave to amend); *Heffner v. City of Warren*, No. 15-cv-13687, 2018 WL 1811469, at *6 n.2 (E.D. Mich. Apr. 17, 2018). The Court will not consider Menard's partial motion for summary judgment for an order on a claim never raised.[1] *See* Fed. R. Civ. P. 56(a) (moving party must "identify[] each claim or

---

[1] Menard's argument cannot be characterized as proving a defect in Belwith's argument. Nor can Menard's motion for summary judgment be seen as part of a defense to Belwith's claims. The Court, therefore, finds Menard to be raising a claim that it did not plead.

defense—or the part of each claim or defense—on which summary judgment is sought"); *Morgan v. Rollins*, No. 620-cv-205, 2023 WL 2438950, at *5 (E.D. Ky. Jan. 31, 2023) (citing *Tucker v. Brooks*, No. 19-12514, 2022 WL 2813037, at *2 (E.D. Mich. July 18, 2022)) ("If a claim is not asserted in the operative complaint, then a court cannot consider it when evaluating a motion for summary judgment."). So this Court will deny Menard's partial motion for summary judgment regarding a proposed order for a claim that was not properly raised. *Popeck v. Rawlings Co., LLC*, 791 F. App'x 535, 540 (6th Cir. 2019) ("Parties may not obtain relief on legal claims raised for the first time in summary judgment briefings. . . .").

### C. Belwith's Motion for Summary Judgment: Breach of Contract (Counts I-IV)

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

Neither party disputes that valid contracts were in place. Belwith asserts, instead, that Menard breached the VCPLs in five ways. First, "[Menard] withheld $1,500,000.00" from Belwith on "baseless" grounds. (Compl. ¶ 40.) Second, Menard "withheld $180,731.00 due to Belwith" for failure to satisfy its delivery obligations. (*Id.* ¶ 44.) Third, Menard "failed to pay invoices for products that it ordered and received from Belwith." (*Id.* ¶ 50.) Fourth, Menard "failed to pay invoices for products" that it ordered and received from Belwith. (*Id.* ¶ 56.) Fifth, Menard "retained ownership of the cabinets provided to Menards for the purpose of displaying Belwith products." (*Id.* ¶ 62.)

8

Belwith moves for summary judgment on each alleged breach.[2] Belwith also argues that Menard has waived affirmative defenses to Belwith's claims. Before the Court dives into whether summary judgment is proper, the Court considers whether Menard waived or forfeited affirmative defenses. Afterward, the Court will address Menard's partial motion for summary judgment and then address Belwith's motion for summary judgment.

### 1. Waiver and Forfeiture of Affirmative Defenses

Belwith argues that the Court cannot consider any of Menard's affirmative defenses because it either waived or forfeited them. "Generally, a failure to plead an affirmative defense . . . results in the waiver of that defense and its exclusion from the case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). But a defense that does no more than point out a defect in the plaintiff's prima facie case can be set up by a denial, not an affirmative defense. *Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *3-4 (6th Cir. Apr. 5, 2023). Thus, non-affirmative defenses need not be asserted in the defendant's answer. *See id.*

Here, Menard does no more than argue that Belwith is not entitled to summary judgment. Nowhere does Menard aver that its arguments will defeat Belwith's assertions of facts, even taken as true. *See Ford Motor Co. v. Transport Indemnity Co.*, 795 F.2d 538, 546 (6th Cir. 1986) ("On the other hand, some defenses negate an element of the plaintiff's *prima facie* case; these defenses are excluded from the definition of affirmative defense."). Therefore, the Court will consider

---

[2] Belwith also argues that it is entitled to summary judgment on its breach of contract claim arising from Menard allowing Belwith competitors to use Belwith display cabinets. However, Belwith's complaint is devoid of such a claim. So the Court will not consider this claim as it was not properly raised in the operative pleadings. *See Morgan*, 2023 WL 2438950, at *5 (E.D. Ky. Jan. 31, 2023) (citing *Tucker*, 2022 WL 2813037, at *2) ("If a claim is not asserted in the operative complaint, then a court cannot consider it when evaluating a motion for summary judgment."); *Popeck*, 791 F. App'x at 540 ("Parties may not obtain relief on legal claims raised for the first time in summary judgment briefings. . . .").

Menard's arguments that merely negate an element of Belwith's *prima facie* case or show a genuine issue of material fact exists.

### 2. Breach of Contract (Count I)

Belwith moves for summary judgment on its first breach of contract claim. Belwith's first breach of contract claim alleges that Menard improperly deducted $1,500,000.00 from its account owed to Belwith under the VCPLs, "on the baseless and pretextual ground that Belwith" did not satisfy its maintenance obligations. (Compl. ¶ 40.) To meet its initial burden under Rule 56, Belwith provides a "small sample" of maintenance request emails. (Belwith's Br. in Supp. of Mot. for Summ. J., PageID.1074). Belwith also includes evidence of third-party companies that Belwith hired to perform display maintenance. One company was JD Sales, which serviced the displays from 2004 to 2016. (Finck Dep. 5-14, 23-26, ECF No. 121-3.) And the other company was Centricity, which serviced the displays from 2016 to 2021. (*See* ECF No. 121-5.)

Menard, on the other hand, contends that JD Sales and Centricity didn't actually fix the display cabinets. It concedes that JD Sales and Centricity reviewed the displays for damage and maintenance. Neither company, however, actually fixed the display cabinets. Menard attaches pictures of cracked and warped display cabinets and provides evidence that one store did not have a visit from JD Sales or Centricity for two years. (Ex. C Photos of Display Cabinets, ECF No. 124-3, PageID.1409-12; ECF No. 121-23, PageID.1231-32.)

Accordingly, whether Menard's $1,500,000.00 deduction constituted a breach of the VCPLs is a question of fact for the jury, not the Court. The Court will deny Belwith's motion for summary judgment on its first breach of contract claim.

### 3. Breach of Contract (Count II)

Belwith moves for summary judgment on its second breach of contract claim. Belwith's second breach of contract claim alleges that "Menards breached the VCPLs when it withheld

$180,731 due to Belwith on the baseless and pretextual ground that Belwith" did not timely deliver the decorative hardware and cabinets. (Compl. ¶ 44.) In its motion for summary judgment, Belwith argues that the 2016 VCPL's *force majeure* clause excused its late deliveries. As a result, Menard improperly assessed Belwith for late deliveries.

Under the 2016 VCPL's *force majeure* clause, Belwith was not to be fined for delayed performance if it suffered from an "extraordinary circumstance beyond its reasonable control." (2016 VCPL, PageID.40.) Thus, Belwith must show that (1) an event occurred meeting the 2016 VCPL's definition of a *force majeure* event, and (2) that event caused Belwith's failure to perform. (*See id.*)

Belwith claims that the COVID-19 pandemic caused it to delay performance. That said, Belwith does not explain exactly how the pandemic caused its delays, nor provide any evidence to show that the pandemic was the cause. *See Kyocera Corp. v. Hemlock Semiconductor, LLC*, 886 N.W.2d 445, 451 (Mich. 2015) (explaining that *force majeure* clauses will only excuse a party's nonperformance if the event that *caused* the nonperformance is specifically identified); *1600 Walnut Corp. v. Cole Haan Co.*, 530 F. Supp. 3d 555 (E.D. Pa. 2021) ("[I]n order to constitute a force majeure, an event must be the proximate cause of nonperformance of the contract.") (citation omitted).

Thus, Belwith fails to meet its burden for summary judgment. The Court will deny Belwith's motion for summary judgment on its second breach of contract claim.

### 4. Breach of Contract (Count III)

Belwith moves for summary judgment on its third breach of contract claim. Belwith's third breach of contract claim alleges "Menards breached the VCPLs when it failed to pay invoices for products that it ordered, and received, from Belwith." (Compl. ¶ 50.) So Belwith must show no genuine issue of material fact exists that Menard wrongfully withheld $215,510.59 for products it

11

ordered and received from Belwith.[3] To prove that Menard "wrongfully" withheld this amount, Belwith provides a one-page "A/R Summary with Aging." (ECF No. 121-24, PageID.1233.) In its response, Menard notes that Belwith has not yet identified "the specific products, item numbers or invoice numbers it claims went unpaid." (ECF No. 124 PageID.1396). The Court agrees with Menard that it has not produced sufficient evidence to prove this breach of contract claim.

This one-page chart does not show a lack of a genuine issue of material fact that Menard wrongfully withheld $215,510.59 for products it ordered and received. Belwith, therefore, fails to meet its burden. The Court will deny Belwith's motion for summary judgment for its third breach of contract claim.

### 5. Breach of Contract (Count IV)

Belwith moves for summary judgment on its fourth breach of contract claim. Belwith's fourth breach of contract claim alleges that an implied contract existed between it and Menard. (Compl. ¶¶ 54-58.) And Menard breached the implied contract when "it failed to pay invoices for products that Menards ordered, and received, from Belwith." (*Id.*) But, as stated, the parties agree that valid express contracts exist. (Compl. ¶ 60; Menard Mot. for Partial Summ. J., PageID.746.) "[A] contract will be implied only if there is no express contract." *Martin v. E. Lansing Sch. Dist.*, 483 N.W.2d 656, 661 (Mich. 1992).

Because the parties agree that the VCPLs governed their relationship, Belwith fails to show that it is entitled to judgment as a matter of law on its implied breach theory. The Court will deny Belwith's motion for summary judgment on its fourth breach of contract claim.

---

[3] Belwith's complaint alleges that Menard wrongfully withheld $304,467.00 in unpaid invoices. (Compl. ¶ 51.) Belwith's motion for summary judgment, however, has a lower figure—$215,510.59. Belwith concedes that the figure in its complaint ($304,467.00) was an error. (Belwith's Reply Br. in Supp. of Mot. for Summ. J., ECF No. 126, PageID.1473.) Thus, the correct amount is $215,510.59.

### 6. Breach of Contract (Count V)

Belwith moves for summary judgment on its fifth breach of contract claim. Belwith's fifth breach of contract claim asserts that Menard is in breach of the VCPLs "by retaining the [display] cabinets and claiming ownership of the [display] cabinets." (Compl. ¶ 63.)

The 2016 VCPL clearly states that Belwith owns all display cabinets sent under that agreement: "It is understood that the display structure is property of Belwith." (2016 VCPL, PageID.38.) And Menard doesn't dispute that all display cabinets sent under the 2016 VCPL are Belwith's. (*See* Menard's Mot. for Partial Summ. J., PageID.749.) Thus, no genuine issue of material fact exists as to Belwith's ownership of the display units sent under the 2016 VCPL.

But what about the display cabinets sent to Menard under the 2010 VCPL? This issue is a much closer call since the 2010 VCPL isn't as clear as the 2016 VCPL:

> **Display Allowance:** Provided to Menards at NO CHARGE per the approved set at Eau Claire West. All recommended changes or alterations to the existing Eau Claire West set will be mutually agreed upon. Upon agreement, the proposed product and/or merchandising changes will be installed at Eau Claire West and upon approval will become the new "approved set" that Belwith will provide to all mega stores. Displays will be maintained and kept in good working condition by Belwith and/or it's field representatives.

(2010 VCPL, PageID.15.) Belwith argues that this clause explicitly states that Belwith owns the display cabinets. It provides extrinsic evidence to prove Belwith acted consistently in ownership of the display cabinets. Menard argues that the language of the 2010 VCPL is ambiguous, and the extrinsic evidence Belwith submits does not clear up the ambiguity.

"Whether a contract is ambiguous is a question of law, while determining the meaning of ambiguous contract language becomes a question of fact." *Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 373 (Mich. 2019). A contract is ambiguous when its provisions are capable of conflicting interpretations. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999). "[W]here its meaning is obscure and its construction depends upon other and

extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury. . . ." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003). A contract is not ambiguous solely because the parties may interpret a term differently. *Id.* at 920.

Here, the Display Allowance provision in the 2010 VCPL is ambiguous. The provision does not state which party owns the display cabinets. Rather, it details that Belwith would provide display cabinets to Menard, free of charge. Belwith provides evidence that it was the one who performed maintenance and upkeep of the display cabinets. But Belwith's attached evidence doesn't prove ownership; the evidence just shows Belwith abided by its contractual duties in hiring someone to maintain the display units. Belwith also provides evidence that it affixed asset tags on the display units from 2015 to 2021. The asset tags do not show Belwith's ownership, either, as the tags were placed on the cabinets only when the 2010 VCPL was being renegotiated. So when considering the 2010 VCPL's language and all the evidence, the Court finds the contract to be ambiguous as to who owns the display cabinets.

For the question of ownership of the displays provided by Belwith to Menard prior to the 2016 VCPL, Belwith has not established a lack of a genuine issue of material fact. Ownership of those displays must be resolved by a jury.

The Court finds no genuine issue of material fact exists as to ownership of the display cabinets Belwith provided to Menard under the 2016 VCPL; however, a genuine issue of material fact does exist as to ownership of the display cabinets Belwith provided Menard under the 2010 VCPL.

## IV. CONCLUSION

For these reasons, the Court will GRANT Menard's motion to dismiss, DENY Menard's partial motion for summary judgment, and GRANT IN PART and DENY IN PART Belwith's motion for summary judgment.

Dated: August 28, 2025            /s/ Paul L. Maloney
                                  PAUL L. MALONEY
                                  UNITED STATES DISTRICT JUDGE